will call the second case of the morning Stevens v. Administrator of the FAA case number 19-60934. Gentlemen, I welcome you here. I would like to note in addition to our usual rule against your photographing or videotaping or recording these proceedings, we will give you five minutes uninterrupted argument before we ask questions. And we would also ask you to make sure your phones are muted or anything like that in the background. So with that, we'll hear first from Mr. Jobe. Thank you, Your Honor. Good morning to the panel of judges. My name is Tony Jobe. I represent Joel Stevens. I would like to reserve five minutes for a rebuttal at the end. The court's decision in this case is whether the FAA has unbridled discretion to withdraw a pilot's medical certificate on an unrelated special issuance medical, not the one having to do with what the case was written about by the Federal Air Service, which is taking away his pilot's employment, his right to be employed as a commercial pilot to earn a living. And of course, that involves violations we claim of the Administrative Procedure Act, violates his constitutional Fifth Amendment to his property and to have a job and to earn money and so forth, and also happens to violate what the congressional statute passed years ago called the Pilot's Bill of Rights. Here is that there was no explanation as to why Mr. Stevens received what's called an a letter of investigation. Now, that's not to be confused with an EIR, which is the Enforcement Investigation Report that was actually performed in this case by a gentleman named Mr. Mong. We've had Mr. Mong in a number of our cases. We've had judges bring up the fact that he seems to leave his curiosity in Washington sometimes at these hearings. But anyway, Mr. Mong was investigating. And so when you get a letter of investigation, you still have your rights to a hearing and due process. And that usually occurs through the NTSB, where you have an appeal to the NTSB's law judges, either on the issue of some kind of improper medical license or something like this, or not flying the airplane correctly. In this case, what they're really talking about, of course, is whether he had a preemployment drug and alcohol test performed at Northoaks in Hammond, Louisiana, in accordance with the Department of Transportation's Part 40, which is a section of DOT. Patrice Kelly used to run that, and she's still there, and she's in charge of these regulations. So anyway, at the beginning, we thought he had his right to a hearing. But before they take the next normal step of assigning an administrative law judge and, you know, turning, allowing, setting the time for a hearing, we get out of the blue with this letter from Dr. Berry, then the federal air surgeon. He's no longer there. He just retired. It's not important, but I just thought I'd mention that, which basically says that he's unqualified to be a pilot because of alleged substance abuse. Well, first of all, I will tell you right now, the case against Northoaks has not got one shred of evidence of any kind of substance abuse by Mr. Stevens. So that's really, whether that's a factor or not, the point is that's what he determined. How he did that, we have no idea because we don't really have a right for a hearing about it. So that's what the beginning and the end of the FAA's decision says. So we maintain that this decision needs to be reversed because, number one, the FAA's withdrawal of the authorization of Mr. Stevens' medical certificate violates the Administrative Procedure Act, which I just mentioned, and by failing to provide a semblance of any reasoned decision making, because all we got from the Federal Air Surgeon was it's revoked. He didn't even say why, and he doesn't list the facts, and so we don't know. And now, because he did that, we don't really have the Administrative Procedure Act right to, or these other acts, to a hearing with a judge. Why did he not respond to the October 10th letter? Why did he not respond to the October 10th letter? Well, to be honest with you, there is no need to respond to the October 10th letter because you can't really, I mean, you can't look into it. Before we can even look into it, it's an enforcement action only. It's not... But he doesn't want to get, I mean, if I got a letter from the State Bar of Texas saying they were investigating me for enforcement action, I would care. So I don't really understand why he wouldn't care that even if he doesn't think it's going to take away his license, he thinks they're going to do something to him, and he didn't think he did anything wrong, why wouldn't he respond? Well, he did respond. He hired me. I responded for him. Long down the road, not, you know, December, I thought it was like December 4th or something that you sent your letter. It wasn't in response to the October 10th letter. It was in response to when they would withdrew his license. It was an enforcement action only, and we were, we knew we were going to have a notice of hearing. Hearing. What's that? Well, explain to me. I'm sorry, Judge. Yes, sir. Please explain to me your distinction about an enforcement action. What would be done at the conclusion of an enforcement action? At the conclusion of an enforcement action, the FAA would recommend in its investigative report to the chief counsel's office, whether or not at drug abatement, not at Dr. Berry's office, whether the pilot's license, whether to take the pilot's license away on violations of some regulation or something. And that would not necessarily have anything to do with a medical because Dr. Berry's Federal Air Surgeon Department, which works with drug abatement at the same headquarters, of course, no longer not with COVID. They're all, they're not at work anymore, but I mean, they are at work. And so, you know, he, he responded that to be, you know, to that, that LLI. We were about to try and respond to the LLI. We were gathering information. And to answer your question, Judge Hayes, and we didn't get a chance to because the letter is October 10th and it says you have 10 days and your letter is December 4th. So that's not even close to 10 days after October 10th. I'm just, to me, it's just shocking that you would get a letter saying you didn't do something you were supposed to do when you think you did do it. And you would just sit there for two months and say nothing. Well, on the LLI kind of letter investigation, we, we know that that's going to lead to a, an assignment to an administrative law judge. And we are doing our investigation so we can be ready for those deadlines. He sets the deadline. The judge does. Well, what, what's it, what's the regulation that says that an LOA goes to an ALJ? What regulation is that? Well, is it in part 40? It depends on the violation. What nature is, we never suspected it had anything to do with, with Joel's medical. It was issued for a tumor to his head on what's called a special issuance by the federal air surgeon. So maybe we got an LOA, LOI, you have time to get organized and you do file an answer. And FRA regulation allows a notice and hearing to take place. So you could. All right, well, let me, let me preface this by saying I don't know how I feel about this case. If you had gone to a hearing and the license had then been revoked, but if you had, what was your defense going to be? Well, first of all, I think you and judge Hayes may be assuming there's some violation. This Doug, Mr. Stevens, the reg says refusal to take a drug test is a violation. There is something in the investigation report that says at least one of the ladies at North Oak supposedly informed Stevens when he was leaving the facility, that that would be counted as a refusal. Personally, I find it very hard to believe that any certified pilot is unaware about drug testing regulations, including ref including refusals. Okay. But let me explain something to you, the rate, the drug test, alcohol and drugs is, as I said, a part 40 DOT test, and it must be done in accordance with those regulations, not regulations that have to do with the administrative hearing about some, he was not accused of violating any flying regulations or doing something wrong. Otherwise, he was only being accused of doing that. Somehow he was at fault for the medical test at North Oaks. The medical test at North Oaks was flawed. There's no factual support for it. It's, it was pretty explained very carefully in our briefs. But what I'm saying is, he, that, that needs to be answered by, when they turn it into, when they went, went from the LOI, where we had an opportunity for a hearing for administrative law judge on the medical, whether the test was done right by North Oaks, we never got to that point because next thing we know, judge, I mean, the federal air surgeon issues his letter. I know you're, I, we are well aware of your argument at this point. And I'm giving you one more chance to answer my question because I'm trying to be friendly. What regulation governs your claim that an ALJ hearing must follow an LOI? Because that's what the LOI is issued for. And we were in the process of getting the facts ready for that, but that, but the underlying test. Do you have a site to a regulation? I think that's the crux of the question. No, it'd be in the brief. I, maybe if I, I guess I've used up my minutes. If you can answer it, please try. Okay. No, you'll get five minutes in rebuttal, Mr. Jobes. I'm giving it. No, no, I didn't mean that. I just, he thought he'd used up his time. I just wanted, was explaining to him. He only used 15 minutes when this runs out. I'm sorry. I'm not trying to interfere with you judge Jones. What you're interested in is a regulation that we were concerned about. Yes, sir. We were concerned about is the fact that this all took place at a drug collection facility called North Oaks. And this is not a flying regulation, but we were glad to see they were going to go the route of an LOI, a letter of investigation versus an EIR. And when they did that, we knew we were going to be assigned to an administrative law judge for a hearing. So we were looking for whatever facts they were going to argue. They simply told us about the when he's standing right in front of her, that's in our brief. He never left then. In fact, what we really have is where we were. It's not important to this case, except there's a state case going on against the laboratory for fraud. They fraudulently changed the, what's it called, the CFI. Okay. All right. All right. Thank you. Well, you have five minutes for rebuttal. We'll move to Mr. Stevenson. Thank you, Your Honor. This is Chris Stevenson representing the administrator of the Federal Aviation Administration. Ultimately, we're here today because the petitioner, Joel Stevens, refused to take a drug test. He was required to take a drug test and he was required to do that because he was employed as and was seeking employment at a different company as a pilot for an air carrier. Because that is a position with critical safety implications, it is covered by an FAA mandated drug testing program. And as you referenced, Judge Jones, the pilots are, these pilots are indeed required to know the drug testing regulations and the other regulations that they operate under. And they're also provided with training by the companies. The FAA requires them to provide that training regarding the drug testing program. In October of 2019, petitioner appeared for one of these required drug testing. He started the test and he left without having completed the test. For all these specific factual allegations that are made in petitioner's briefs, none of those underlying facts are disputed. He was required to take a test. He started taking the test and he left without having finished taking the test. Based on that undisputed evidence, following an FAA investigation, the Federal Air Surgeon concluded that petitioner had, in fact, refused a drug test. The decision, the withdrawal letter of November 25, 2019, does specifically reference a drug testing refusal. This court is reviewing that decision of the Federal Air Surgeon for substantial evidence. With undisputed evidence that the petitioner was required to take a drug test and did not actually take the drug test he was required to take, that evidence is more than substantial. And accordingly, this, we request that this court deny the petition. Additionally, petitioner's refusal of a drug test meant that public safety warranted the withdrawal of a regulatory exemption that had been issued to the petitioner. Petitioner needed this regulatory exemption because, as my colleague across the aisle referenced, he had an unrelated medical condition. So the Federal Aviation Regulations, in this case 14 CFR Part 67, lists the medical requirements to hold an unrestricted medical certificate. It's undisputed here that the petitioner didn't meet those requirements. But the Federal Air Surgeon has the discretion to issue a regulatory exemption to allow a pilot to fly despite a lack of qualifications so long as, when the Federal Air Surgeon is exercising the discretion, so long as the airman has shown that they will be able to fly without endangering public safety. In this case, these exemptions are called authorizations for the special issuance of an airman medical certificate. They have conditions and limitations on them, usually related to monitoring and testing. And just as the Federal Air Surgeon has discretion to issue these exemptions, he has discretion to withdraw them. In this case, the Federal Air Surgeon had exercised his discretion to issue petitioner one of these authorizations. That authorization specifically said on it that it was only in effect so long as there was not a change in the petitioner's The regulations also specifically say that one of these authorizations can be withdrawn if there's a change in the petitioner's or in the holder's medical status. Having received this report and made the determination that there was a refusal, in November 2019, the Federal Air Surgeon withdrew this previously issued authorization, and that's what a petitioner is now challenging. As I mentioned earlier, and Your Honor had asked about some regulatory citations, it's undisputed that the petitioner was required to take a drug test, that he appeared for it, and that he then left. By definition, under 49 CFR section 4191, that is a refusal. Additionally, the FAA's airman medical standards in 14 CFR part 67 specifically define that a positive or a refusal on a DOT-required drug or alcohol test is the disqualifying medical condition of substance abuse. That, as expressed in the preamble to that regulation, the purpose of that is to, so including a refusal in that, is that that is the only way then that the FAA has of ensuring that someone is safe before they might be able to go back to flying again. Because, once someone has refused a drug test, now we don't have that assurance that this pilot, who is possibly flying passengers around for hire, is safe. In this case, the notification from the employer, that's a regulatory-required notification, that notification goes to the Drug Abatement Division. I would note, for the sake of clarity, the Drug Abatement Division is part of the Office of Aerospace Medicine, which is headed by the Federal Air Surgeon. So, it's actually not a separate part of the agency that works with the Federal Air Surgeon. It's a subordinate aspect of the Federal Air Surgeon's office. They started an investigation. So, why not give him a hearing? Well, Your Honor, Congress has established a set of circumstances under which you get a hearing. If an individual is applying for a certificate or we are revoking a certificate, which would include an unrestricted airman medical certificate, then they are entitled to a formal hearing on the record before an administrative law judge of the National Transportation Safety Board. But that process that Congress laid out is specifically limited to the question of whether or not the person meets the qualifications for their certificate. It doesn't apply to situations like this, where we know a person isn't qualified, and the question is whether or not there's going to be an exercise of discretion to either issue or withdraw an exemption. And although I'm not aware— But what about if he had some evidence, and I'm not saying he does here, but what about if he had some evidence that it was a sufficient urine sample and was told everything was fine and allowed to leave, and then they made up this story? Again, I'm not saying that happened here. This is just a hypothetical. What if they just didn't like him, made up a story, and here we are? How does he prove that? Well, he had— In this case, there were multiple instances where a petitioner could have submitted information. As we've discussed already, he received a letter of investigation. That is the primary opportunity for him to provide information. It specifically puts him on notice of what he's being invested for, this report of refusal on this given day. That is the primary place he could submit documents, he could have an interview, he could call us, he could write us, whatever he so chooses to do. Well, two questions, Mr. Stevenson. First of all, what's your best case, if there is one, regarding what you say is purely discretionary action by the surgeon that causes it to deviate from the more specific hearing requirements? Number two, what about the fact that he called the employer, I think, and tried immediately to get an authorization to reschedule? And maybe number three is that his lawyer did, in fact, seek an opportunity for more formal inquiry after they received the letter from the surgeon, and the surgeon said something like, we will give you a chance to respond, or something like that, and they tried without success. Sure, Your Honor, yes. So, the limitation on the jurisdiction about what goes before the NTSB for hearing is in the statute, I believe it's 44703. If I'm mistaken about that, I can update the court afterward. There's a series of interlocking statutes, 49 U.S.C. 44703, 44709, and 46105, that lay out this framework for when we're either, if we deny an application, or if we're taking away a certificate, how that goes in front of the NTSB. But the, I'm sorry, I apologize, Your Honor, I've lost the beat on your second question. Well, I was just observing that he did something in the investigative record that he had, in fact, attempted to reschedule. Yes, yes. So, as part of the, as Your Honor's correct, as part of the investigation, the FAA had spoken with the person at the company, the designated employer representative, and they related to us what Petitioner had said. That's ultimately, that's not relevant. You get one chance to want to take one of these drug tests. If you walk out in the middle of a drug test, you are not permitted to just do a different drug test later. In fact, it's actually fairly common for people, it's actually fairly common for people to, having had an issue with a drug test, to then try to walk and just go take a different drug test the same day after either perhaps taking a masking agent or perhaps having consumed a large quantity of water so that they provided to lose sample later in the day that will produce a negative. And that, so there are, there are testing integrity reasons why you can't allow, why people are not allowed to come back and try again outside of the strictures of the regulations, which are, you get to, you attempt, you provide a sample. If you're unable to provide a sample, it starts this three-hour shy bladder period during which you are allowed to drink more water, not, there's a limitation on how much you can drink so it doesn't dilute the sample, but where you can drink more water. If you still are unable to provide a sample after three hours, there's a process for medical review of, and this is all before it even would get reported to the FAA. As far as additional chances to present something to the federal air surgeon, the one other thing I did want to note, this was raised in petitioner's reply brief and then here today was the suggestion that the LOI did not put him on specifically in this case. I think that's generally incorrect, but specifically in this case, I would note that after retaining an attorney, petitioner didn't respond to drug abatement's letter of investigation, but they did submit, he did submit a letter of representation to the office of aerospace medicine to a separate part, the aeromedical certification division. That is in the record at R101. It's not in the joint appendix that you have. I didn't have a reason to cite it in the response brief, so it's not in the joint appendix. I can file a supplemental appendix if the court's interested. And of course, if the court requests the entire record, you would receive it then, but that's significant because it shows that the petitioner was well aware that there were medical implications of this to specifically file something. And you can tell from that page number, that document doesn't appear in the investigative report. It appears in his normal airman medical file, which is the part of the record after page, starting on page 79. So when did that letter come before or after the surgeon's formal notification to him? That letter came before the letter is signed. There are several signatures on the letter from, I believe, the petitioner, and then also a signature from the attorney. And the final signature is signed on October 18th of 2019. So approximately eight days after the letter of investigation was sent. But that's another opportunity that the petitioner had, if the petitioner had so chosen, to provide information to the federal air surgeon. Okay, well, let me step back just a second, because you cited the statutory authority for NTSB hearings. And you don't cite authority for dispensing with NTSB hearings? Or is it just your argument that there's no due process required if there's not a hearing required? No, Your Honor. So as to the is specifically to determine whether or not the person is qualified to hold the certificate. In this case, that's not an issue because the petitioner is not qualified. I understand that. I understand the limits of what you're saying that hearing is about. But this has to do with what kind of process is due when a person has this discretionary approval, and then it's going to be withdrawn? Yes, Your Honor. The agency does not assert that the petitioner is not entitled, the due process does not cover the petitioner at all in this case. But petitioner is entitled under due process to notice and an opportunity, a reasonable notice and reasonable opportunity to be heard under the circumstances. And in other Cleveland versus Loudermill? I apologize, Your Honor, I do not know the applicability of that here. I do know that that other circuit courts have this is the to the best of my knowledge. This is the first time anyone has argued the due process requires a hearing before the withdrawal of a special issuance. But there have been occasions where individuals have previously gone to circuit court arguing that they were entitled to a hearing for the on the beginning when the federal air surgeon exercise discretion as to whether or not to issue an authorization in the first place. That's the Seventh Circuit in Copenbarger and the Eighth Circuit in Graham. Both of them held that the petitioner there was not entitled to a hearing. Additionally, with regard to other sorts of regulatory exemptions that the FAA does, the circuit courts have held that a hearing is not required before the withdrawal. For specifically, for example, the we issue a kind of a waiver called a banner tow waiver, which allows, as you might expect from the name, allows someone to do those banner towing operations that you you would see. And then the 11th Circuit in aerial banners, which is five forty seven after twelve fifty seven, specifically ruled that that that the FAA did not have to provide a formal hearing on the record before that. Again, we needed to provide them with notice and an opportunity to be heard. But that was provided here, including, as your honor referenced, the letter that was sent in by petitioner through counsel after the withdrawal. Petitioners still at that point has the opportunity to submit evidence and and seek reconsideration. And there's some dispute in the briefs about whether or not reconsideration was sought. But there's no dispute that, again, the petitioner chose not to submit any additional information about what happened. The petitioner doesn't have to respond to us, but the petitioner was given a meaningful opportunity to be heard and chose not to take it. So in this case, it remains undisputed that petitioner was required to take a drug test, that petitioner commenced the testing process and the petitioner then left without having completed the drug test. And I think that partially emphasizes how this process already has given us the a meeting given petitioner a meaningful opportunity to be heard, even with the opportunity in this court to write. You're saying that he's required as a pilot to know the effects of this leaving early thing. It wasn't some mistaken thinking I can just come back Correct, Your Honor. As as referenced, indeed, even in petitioner's initial brief, it's a best practice for the collector to inform the pilot or other airmen who's being tested that leaving is a refusal. That's not a requirement. And part of the reason why that's not a requirement is because the pilots and the other airmen who are covered by FAA drug testing are required to know these regulations. They're required to know that it's a refusal that within the revocation context that has been repeatedly litigated and upheld by the National Transportation Safety Board after those formal hearings on the record for the where you have an unrestricted medical certificate or the pilot certificate is is going away. And again, additionally, you can see evidence of this in the investigative report. The petitioner was provided with training by by air carriers are required to provide training to these pilots. And in this case, didn't provide that training. You can see the training. You can see an acknowledgement form from the petitioner. So the federal air surgeon here was faced with a decision. The federal air surgeon has uncontroverted evidence that the petitioner has refused a drug test. And it is difficult to see what the federal air surgeon could have concluded other than that there was a refusal. And having concluded that there was a refusal, it's difficult to see what reasonable action the federal air surgeon could have taken other than withdrawing the medical exemption that had previously been issued to the petitioner. Because there was a reasonable basis for the federal air surgeon's decision and substantial evidence, this court must deny the petition. Thank you. All right, sir. Thank you, Mr. Job. You have five minutes for rebuttal. Uh, Judge Jones and Judge Hayes, I appreciate your questions. Everything he said factually is almost completely refuted by the actual facts. He did. He only went. He had a special issuance for this tumor, which was totally taken care of. The federal air surgeon had issued him a special issuance. You don't go revoking that over something that Mr. Stevens is now saying he didn't do the didn't do the drug test. He showed up. He showed up to try and get his medical certificate for employment with Bristol. He didn't have a job. He wasn't flying at the time. He had another job, but he wanted to go back to flying. So he has to go. He ended up with what's called a shy bladder problem. And if you look at this, everything that the North Oaks did was either done improperly, violates part 40, didn't follow the rules from Patrice Kelly about how to do it. Our experts have already looked at all this and determined all this. We need to hear it. Mr. Job, did your client know that at the time? Did he know that they were using proper collection methods and so on? Was she? Do you know? Tell me what I mean? No. I mean, you're raising all these questions about collection methods and documentation after the fact. But Mr. the only thing we have in the administrator in the entire record is that that your client, most favorably, you was there for an hour and a half and then he walked out because he couldn't produce a sample. Can you hear me? Yes, I can. This was a pre-employment test, not any sort of job that he already had with Bristol. He was trying to get rehired. I mean, to get a job and to do this, it's up to the collection facility to do the test right. All I can tell you is we have plenty of evidence and we put it in the record in this case, but we need to have a hearing. We need to have an NTSB. Judge Hayes has asked a very good question repeatedly. Why didn't we get a hearing once we got the LOI? That's when you usually get a hearing. But instead, along comes a surprise letter from Dr. Berry that says you've just lost your medical. What does that medical on his head? Is there any doubt that he knew when he left they had not completed the test? Whatever the merits of that, shy bladder or otherwise, that he left knowing the test was not done or finished? Well, in the shy bladder test, they have these procedures you go through where you give him 40 ounces of water. You'll ask him to stay for three hours. He was to do that. Jenna Flanagan let him go sooner. She didn't know about that. But these to the Fifth Circuit in this format right now, and the reason it didn't ever get to the hearing is because instead of moving forward with the LOI, Dr. Berry just issues this letter without giving any real reasons why he was pulling his special issuance about his head. Are you asking us to create a circuit split with circuits that have held that no hearing is required for a matter? Well, this is not a really a discretionary license matter because the FAA's procedure for the Federal Air Service, well to follow when you're doing a pre-employment for it to be a commercial pilot of any sort is very well set down exactly how it's supposed to go. And it's different than other kinds of employment. This was what he went for. He stayed the whole time. He didn't leave any facts that say he did leave is ridiculous. She just, Jenna Flanagan stopped the test because she didn't know what to do. And then her supervisor came in and pretended that she was doing the test for Jenna because she knew it was messed up. I've never seen such a big mess that needs to go to an Administrative Law Judge because these judges will understand it. The hearing is not required for the denial of a withdrawal of a government benefit. You know, I mean, the thing is we don't have a government benefit because he he went through what? I'm sorry, I'm getting my assistant is trying to tell me something that she thinks is important. The point is if we get this to an Administrative Law Judge the way it's supposed to go off the LOI that was issued, which is where it would have come from. But instead, somehow, the Judge, Dr. Bailey issues this letter saying that he's made up his mind that he can't have it. He takes away the other other license, which had nothing to do with anything in this pre-employment test. Okay, well, I think your time has elapsed. Okay. Thank you very much, gentlemen, and the court will be in recess for five minutes.